WM. WOODARD, Appellant, v  JOSEPH HAMILTON, Appellee.

Sureties: INDEMNITY: ACCOUNTING.

*Appeal from Decatur District Court.*—R. C. HENRY, Judge.

THURSDAY, MAY 26, 1892.

THE pleadings are quite lengthy, covering some seventeen pages of closely printed matter. The following, however, will be a sufficient statement of the issues: On the twenty-seventh day of September, 1887, the plaintiff and defendant, as co-sureties for one A. R. Roberts, executed with him as principal these two promissory notes to the Farmers' & Traders' Bank of Leon, Iowa, one for one thousand dollars, and one for eight hundred and seventy-five dollars. On March 22, 1888, the note for eight hundred and seventy-five dollars was renewed as to the balance due thereon by three notes of two hundred and seventy-five dollars each, executed by the same parties. The plaintiff alleges that as such surety

he was required to and did pay on said notes, in different sums stated, to the amount of one thousand, fifty-two dollars and eighty-five cents, and that the balance thereof was paid by the principal, Roberts. The plaintiff alleges that the defendant received from Roberts, as indemnity, the promissory note of Roberts for five hundred dollars, and five thousand dollars of the capital stock of the Kansas Dry Goods Company, of the value of one thousand, five hundred dollars, which collateral security was taken by the defendant without the knowledge of the plaintiff. The plaintiff asks an accounting as to said collateral securities, and, if the same shall be insufficient to satisfy the amounts paid by the plaintiff, that the defendant be required to contribute. The defendant admits that they were co-sureties as alleged; denies that the plaintiff made the payments alleged; denies that he received any indemnity as alleged; alleges that he expended one hundred and fifty dollars in realizing on said certificates of stock; and further alleges that the plaintiff demanded and received from Roberts stock to the amount of twenty-seven thousand, five hundred dollars, in shares of the stock of said Kansas Dry Goods Company, as indemnity as such surety, which stock was and is worth two thousand, seven hundred and fifty dollars. The defendant asks that the plaintiff be required to account for said securities; that the value thereof be applied to the payment of said notes; and the defendant further asks judgment for the amount he paid, to-wit, four hundred and eighteen dollars and two cents. The case, being in equity, was submitted to the court, and decree entered dismissing the plaintiff's petition, and for costs. The plaintiff appeals.—*Affirmed.*

*Marion Woodard* and *Samuel Forrey,* for appellant.

*E. W. Curry* and *Parish & Hoffman,* for appellee.

GIVEN, J.—I. The character of the testimony, and the manner in which the examination was made, rendered it difficult to abstract. Owing to disputes as to the correctness of the abstract and amendments, we have read the entire transcript of the evidence, consisting of some one hundred and fifty typewritten pages. But one principle of law is cited in argument, and as to this there is no contention. It is conceded to be a settled principle of equity that, if one of several co-sureties subsequently takes a security from the principal for his own indemnity, it inures to the common benefit of all the sureties, and that each has a right of contribution from his co-surety for any amount which he has been compelled to pay by reason of the suretyship. The evidence before us is from the parties, the son and attorney of the plaintiff, the attorney of the bank, who formerly acted in these matters as attorney for the defendant, and the principal in the notes, A. R. Roberts. The evidence is in direct conflict, and shows in an unusual degree the influence of personal interest and feeling. It is not required that we should here discuss this evidence at length; it will be sufficient that we state the conclusions reached therefrom.

We first inquire as to what payments were made by the plaintiff as surety. It is quite clear that he paid one hundred dollars to the bank on the one thousand dollar note on May 4, 1888, and in June following four hundred and twenty-one dollars and thirty cents, which was in full satisfaction of that note, other payments having been made thereon It also appears that he paid some thirty-four dollars and fifty cents interest in advance at the time the eight hundred and seventy-five dollar note was renewed, and thereafter paid upon a judgment rendered against him on the renewed notes four hundred and ninety-six dollars and fifty cents debt, interest and costs. The appellee contends that most, if not all, of this amount came from the sale of land owned by Roberts. While it is true a part of it did come from the sale of the particular land mentioned, yet we are satisfied that said land had theretofore been sold and conveyed by Roberts to the appellant on account of existing indebtedness, and that the land and the money derived from its sale by the appellant were his.

II. We next inquire whether the appellant held any indemnity from Mr. Roberts against his liability as surety to the bank. It is not questioned but that the appellant did receive from Roberts certificates of stock of the Kansas Dry Goods Company, which he afterwards transferred to Joseph Roberts, son of A. R. Roberts, taking his unsecured promissory note therefor in the sum of six thousand, eight hundred and twelve dollars and fifty cents, payable in two years, without interest. The appellant's claim is that this stock was taken by him from A. R. Roberts upon a final settlement between them, and on account of existing indebtedness of Roberts to him. This was the same settlement at which the appellant acquired the land above referred to. It is claimed by the appellant that he took these certificates of stock at twenty-five cents on the dollar, and that they were worth that amount. Neither the appellant nor his son, who conducted the settlement for him, nor Mr. Roberts, with whom the settlement was made, attempted to give anything like a detailed or intelligent account of what evidences of indebtedness were turned over to Roberts in consideration of these shares of stock. In view of the relation of the appellant and of A. R. Roberts and Joseph Roberts to the Kansas Dry Goods Company, the absence of any good reason why credit for so large a sum was extended to Joseph Roberts, and the unsatisfactory character of the evidence upon this subject throughout, we are led to think these shares of stock were not received by the plaintiff in consideration of existing indebtedness, but as indemnity for his liability as surety to the bank. The appellant, in seeking to charge the appellee upon shares of stock in the same company, claims that they were worth twenty-five cents on the dollar, while the appellee contends that they were only worth ten cents. In either event the value of those received by the appellant was greater than the amount which he has paid to the bank as surety for Mr. Roberts. It might be said that these shares of stock were taken in the same settlement in which the land was taken, and, if the transaction as to the land was *bona fide*, it should be so held as to the shares of stock. The disposition made of the land was consistent with fair dealing, and free from the badges of fraud that mark the disposition made of the stock.

As this view of the case fully disposes of the appellant's claim for relief, we need not notice the several questions discussed as to the appellee's liability. For the reasons stated, the judgment of the district court is AFFIRMED.